IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN R. HOLMAN,                    :
                                   :
                  Plaintiff,       :
                                   :    Civil No. 4:06-cv-2133
            v.                     :
                                   :    Judge John E. Jones III
OFFICER KOLTANOVICH                :
*York Police Department, in his*   :
*individual capacity*              :
                                   :
                  Defendant        :

## MEMORANDUM

### October  23, 2007

Plaintiff John Holman filed this § 1983 action against Defendant Officer

Michael Koltunovich[1], as well as the City of York and York's mayor and police

commissioner.  Holman alleges violations of his constitutional rights of free

exercise of religion, speech, and assembly as well as claims of unlawful arrest and

excessive force.  By an order of May 11, 2007, the Court dismissed Holman's

claims against York, the mayor, the police commissioner, and Officer Koltunovich

in his official capacity.  (Doc. 26.)  Currently before the Court is Officer

Koltunovich's motion for summary judgment on Holman's claims against him in his

---

[1]  The defendant was misnamed in the complaint and caption as "Koltanovich."  *See* Def.'s
Answer (Doc. 27) at 1.

individual capacity.  (Doc. 32.)  For the reasons set for below, the Court will the
motion.

## I.    BACKGROUND

The following facts are derived from the complaint and the briefs, exhibits,
and other evidence submitted by the parties in support of and opposition to the
current motion.  These facts, and any reasonable inferences drawn therefrom, are
viewed in the light most favorable to the non-moving party, Holman.  *Anderson v.
Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Plaintiff John Holman is a Christian, pro-life advocate who travels to the
Planned Parenthood of Central Pennsylvania facility in the City of York to state his
beliefs regarding abortion.  (Holman Aff. ¶¶ 3-4.)  These actions are motivated by
Holman's sincerely held religious beliefs.  (Holman Aff. ¶ 7.)  Prior to the time in
question, Holman had traveled to the Planned Parenthood facility for this purpose
approximately a dozen times. (Def.'s Statement of Undisputed Material Facts
["SUF"] ¶ 19; Pl.'s Statement in Opposition ["SIO"] ¶ 19.)

The Planned Parenthood facility is located on South Beaver Street in York
between Hancock Street and Rose Alley.  (SUF, SIO ¶¶ 8, 10; Holman Dep. at 10-
11, Ex. 1.)  Planned Parenthood owns or leases a parking lot which is located
across Rose Alley from the facility and is delineated from Rose Alley by a curb.

2

(SUF, SIO ¶ 10.)  Rose Alley is a narrow alley that is subject to two-way vehicular

traffic.  (SUF, SIO ¶¶ 8, 23.)  In addition to vehicles accessing the Planned

Parenthood parking lot, Rose Alley is also subject to traffic going to and from a

printing business located further down the alley, including tractor-trailer trucks.

(*Id.*)  There are no signs restricting the direction of travel, the size of vehicles using

the alley, or the hours during which vehicles may use the alley.  (SUF, SIO ¶ 23.)

Public sidewalks are located in front of the facility along Beaver Street and along

the side of the facility from the parking lot to Beaver Street. (SUF, SIO ¶ 7;

Holman Dep. at 12-14, Ex. 1.)

Businesses in and around the City of York contract with and pay the City to

have off-duty police officers work overtime details at their facilities.  (SUF, SIO ¶

1.)  Planned Parenthood has such a contract with the City.  (*Id.*)  Officer

Koltunovich was assigned to the overtime detail at the Planned Parenthood facility

on December 7, 2005.  (SUF, SIO ¶ 12.)  Officer Koltunovich had worked the

overtime detail at the Planned Parenthood facility previously.  (Koltunovich Dep. at

20.)

As a result of public safety concerns regarding vehicular traffic in Rose

Alley, prior to December 7, 2005, Officer Koltunovich and other officers had

instructed anti-abortion advocates and Planned Parenthood personnel that they

could not stand, linger, or remain in Rose Alley.  (SUF, SIO ¶ 9; Holman Dep. at 31-32, 43.)  Prior to December 7, 2005, Officer Koltunovich had instructed Holman and other anti-abortion advocates that the parking lot located across Rose Alley was private property owned by Planned Parenthood and that Planned Parenthood did not want Holman or other anti-abortion advocates trespassing on its property.  (SUF, SIO ¶ 11; Holman Dep. at 9-10.)  Officer Koltunovich did not otherwise restrict Holman or any other pro-life advocate from making comments, distributing literature or displaying signs, nor did Officer Koltunovich restrict Holman or any other pro-life advocate from engaging in any activities on any of the public sidewalks surrounding the Planned Parenthood facility.  (SUF, SIO ¶¶ 4-7.)

On December 7, 2005, Holman traveled to the Planned Parenthood facility to state his beliefs regarding abortion.  (Holman Aff. ¶ 10.)  As Holman was standing in Rose Alley, a large truck turned into the alley.  (SUF, SIO ¶ 13.)  To avoid being struck by the truck, Holman trespassed into Planned Parenthood's parking lot.  (*Id.*)  Officer Koltunovich then arrested Holman for trespassing.  (*See* SUF, SIO ¶ 15.)  At a March 9, 2006  hearing, District Justice Haskell dismissed the citation against Holman.  (SUF, SIO ¶¶ 17, 29.)  In doing so, however, District Justice Haskell indicated:

> I should say, Officer Koltunovich, on the record, I
> understand exactly why you did what you did, when you
> did it because you needed to do it, and I don't find you
> at fault in having filed the citation.  You were given
> particular marching orders and they were, no one is to be
> on these locations.
>
> It's not your job to interpret those orders and figure out
> what this Court is going to do.  For God's sake, you can
> get a migraine trying to figure out what I'm going to do.  I
> won't put anybody in that scenario.  So, I have no
> problem with the police department having exercised their
> proper authority to keep people off the private property
> of Planned Parenthood.

(SUF, SIO ¶ 29; Tr. of Proceedings of Preliminary Hearing, Mar. 9, 2006 at 49.)

## II.   STANDARD OF REVIEW

Summary judgment is appropriate if the record establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant meets this burden by pointing to an absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial.  *Id.* at 325.  Once the moving party meets its burden, the burden then shifts to the non-moving party to show that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e).   An issue is

"genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a factual dispute is "material" only if it might affect the outcome of the action under the governing law. *Anderson*, 477 U.S. at 248-49.

In opposing summary judgment, the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. UPS*, 214 F.3d 402, 407 (3d Cir. 2000). Arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985). However, the underlying facts and all reasonable inferences therefrom must be viewed in the light most favorable to the non-moving party. *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852 (3d Cir. 2006).

Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences that a fact-finder could draw from them. *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982). Still, "the mere existence of *some* alleged factual dispute between the parties will not

defeat an otherwise properly supported motion for summary judgment; there must be a *genuine* issue of *material* fact to preclude summary judgment." *Anderson*, 477 U.S. 242, 247-48 (1986).

## III.   DISCUSSION

Holman brings this action pursuant to 42 U.S.C. § 1983.  Section 1983 is not itself a source of substantive rights, but a means of redress for violations of federal rights elsewhere conferred.  *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). Holman alleges that Officer Koltunovich violated his First Amendment rights of free exercise of religion, speech, and assembly.  Holman also alleges that Officer Koltunovich arrested him without probable cause and used excessive force during the arrest.  Holman seeks a declaratory judgment, nominal and compensatory damages, injunctive relief, and punitive damages.  Officer Koltunovich disputes the merits of these claims and raises the defense of qualified immunity.  The Court will address each of these issues in turn.

### A.   Free Exercise of Religion

Holman first argues that Officer Koltunovich's directive not to enter Rose Alley and his subsequent arrest of Holman violates his First Amendment right to the free exercise of religion.  The Free Exercise Clause of the First Amendment, which is applicable to state action pursuant to the Fourteenth Amendment, *Cantwell v.*

7

*Connecticut*, 310 U.S. 296, 303 (1940), provides that "Congress shall make no law

... prohibiting the free exercise [of religion]."  The Free Exercise Clause forbids any

regulation of religious beliefs as such.  *Blackhawk v. Pennsylvania*, 381 F.3d 202,

209 (3d Cir. 2004) (citing *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*,

508 U.S. 520, 533 (1993) and *Employment Div., Dep't of Human Resources of*

*Or. v. Smith*, 494 U.S. 872, 877 (1989)).

The free exercise of religion, however, often includes not only belief but also

religiously motivated conduct. *Smith*, 494 U.S. at 877.  In this case, Holman's

actions at the Planned Parenthood facility are motivated by sincerely-held religious

beliefs.  When religiously motivated conduct comes into conflict with a law or

government action, the analysis of a free exercise claim depends on the nature of

the challenged law or government action.  *Tenafly Eruv Ass'n, Inc. v. Borough of*

*Tenafly*, 309 F.3d 144, 165 (3d Cir. 2002).

If government action is "neutral" and "generally applicable," and burdens

religious conduct only incidentally, the Free Exercise Clause offers no protection.

*Blackhawk*, 381 F.3d at 209; *Tenafly*, 309 F.3d at 165.  On the other hand, if

government action is not neutral and generally applicable, strict scrutiny applies,

and the government action violates the Free Exercise Clause unless it is narrowly

tailored to advance a compelling government interest.  *Id.*  Government action is

not neutral and not generally applicable if it burdens religious conduct because of its religious motivation or if it burdens religiously motivated conduct but exempts substantial comparable conduct that is not religiously motivated. *Church of the Lukumi Babalu Aye*, 508 U.S. at 533; *Blackhawk*, 381 F.3d at 209; *Tenafly*, 309 F.3d at 165.

In this case, Officer Koltunovich's actions were neutral and generally applicable. No evidence indicates that Officer Koltunovich prohibited Holman from standing in the alley because of Holman's religious beliefs. Rather Officer Koltunovich's instruction was directed at preventing precisely the situation that occurred here: an individual being endangered by vehicular traffic in the narrow alley. Holman was arrested because he, admittedly, trespassed onto private property, conduct that was necessitated by his failure to follow Officer Koltunovich's prior directive. Officer Koltunovich gave his directive to both pro-life protestors and Planned Parenthood personnel. Holman argues in his brief and affidavit that "Officer Koltunovich freely allows Planned Parenthood personnel to use and even stand in the alley." (Pl.'s Opp. at 5; Holman Aff. ¶ 22.) Officer Koltunovich, however, did not observe any Planned Parenthood personnel standing in the alley (SUF, SIO ¶ 27), and Holman admits that he does not recall any Planned Parenthood personnel standing in the alley (Holman Dep. at 39). Holman's

allegation is unsupported, and in fact contradicted, by the evidence, and therefore does not create a genuine dispute of material fact. *See Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985) ("Legal memoranda ... are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion."); *Hackman v. Valley Fair*, 932 F.2d 239, 241 (3d Cir. 1991) ("When, without a satisfactory explanation, a nonmovant's affidavit contradicts earlier deposition testimony, the district court may disregard the affidavit in determining whether a genuine issue of material fact exists."). Further, there is a difference between patrons and employees crossing from the parking lot to enter the Planned Parenthood facility, which presents little risk to public safety, and Holman lingering in the alley, which presents the very risk that became reality on December 7, 2005.

Officer Koltunovich's actions only incidentally burdened Holman's conduct. The Planned Parenthood facility is bordered by public sidewalks in which Holman was free to engage in his religious conduct. Officer Koltunovich did not prohibit or prevent Holman or any member of his group from carrying signs, distributing literature, expressing their views, or otherwise engaging in religiously motivated conduct on these sidewalks or in any location other than the alley. Holman retained substantial opportunity to engage in his religiously motivated conduct. Because

Officer Koltunovich's directive was neutral and generally applicable, and burdened Holman's religious conduct only incidentally, Officer Koltunovich is entitled to summary judgment on Holman's free exercise claim. *Tenafly*, 309 F.3d at165.

Holman argues that strict scrutiny applies, regardless of whether Officer Koltunovich's actions were neutral and generally applicable, because he has combined his free exercise claim with other First Amendment claims, namely speech and assembly. (Pl.'s Opp. at 14.) The Supreme Court in dictum in *Smith* suggested that strict scrutiny may still apply to neutral and generally applicable government action that implicates not only the Free Exercise Clause but also other constitutional protections. 494 U.S. at 881. Questions about the existence and application of such a "hybrid rights" exception have created varying interpretations across federal courts. *See Green v. City of Philadelphia*, C.A. No. 03-1476, 2004 WL 1170531 at *5-7 (E.D. Pa. May 26, 2004) (collecting cases). The Third Circuit has not definitively adopted or rejected a hybrid rights exception, but has suggested that such a claim exists. *Blackhawk*, 381 F.3d at 207 (stating that in *Smith* the Supreme Court recognized and "did not overrule prior decisions in which 'hybrid claims' ... had prevailed against neutral, generally applicable laws"); *Tenafly*, 309 F.3d at 165 n.26 (stating "[s]trict scrutiny may also apply when a neutral, generally applicable law incidentally burdens rights protected by the Free Exercise Clause in

conjunction with other constitutional protections, such as freedom of speech and of the press, or the rights of parents ... to direct the education of their children," but finding no such claim at issue). Because the Third Circuit has recognized at least the possibility of a hybrid rights claim, the Court will address the merits of such a claim in this case.

As an initial matter, even those courts that have explicitly recognized a hybrid rights claim require a "colorable showing of infringement of recognized and specific constitutional rights" to trigger strict scrutiny.[2] *See, e.g.*, *Miller v. Reed*, 176 F.3d 1202, 1207-08 (9th Cir. 1999); *Swanson ex rel. Swanson v. Guthrie Indep. Sch. Dist.*, 135 F.3d 694, 700 (10th Cir. 1998); *see also Green*, 2004 WL 1170531 at *6 (collecting cases). Because, as set forth below, Holman has not made out colorable claims for violation of his rights to free speech and assembly, any hybrid rights claim must also fail. *See Lighthouse Inst. for Evangelism Inc. v. City of Long Branch*, 100 Fed. Appx. 70, 75 (3d Cir. 2004) (affirming denial of injunction on hybrid rights because plaintiffs were unable to show likelihood of success on other constitutional claims).

Further, should strict scrutiny apply, Officer Koltunovich's actions do not

---

[2]  In his opposition brief, Holman incorrectly attributes this quotation to the Supreme Court's decision in *Smith.* (Pl.'s Opp. at 13.)  No such language appears in that decision.

violate Holman's free exercise rights because they were narrowly tailored to serve a

compelling government interest.  Officer Koltunovich gave his instructions

regarding standing and lingering in the alley because of concerns about safety and

the traffic flow.  Holman, correctly, does not deny that these are compelling

interests.  *See Schenck v. Pro-Choice Network Of W. N.Y.*, 519 U.S. 357, 375-76

(1997) (finding injunction supported by "the significant governmental interest in

public safety"); *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 768 (1994)

(agreeing that the government "has a strong interest in ensuring the public safety

and order [and] in promoting the free flow of traffic on public streets and

sidewalks...").

Instead, Holman argues that Officer Koltunovich's asserted interests are

mere pretext.[3]  The evidence presented, however, does not support this allegation.

Holman's own experience - nearly being struck by a truck because he was standing

in the alley - by itself substantiates Officer Koltunovich's safety concerns.  Holman

argues that the alley is subject to "generally little traffic" (Pl.'s Opp. at 14), but in

the less than eight minutes of video which Holman submitted as an exhibit, one 18-

---

[3]  While Holman alleges that Officer Koltunovich's interests in safety and traffic flow are pretextual, he does not explicitly allege what the "true" reasons for Officer Koltunovich's actions were. Presumably, Holman means to argue that Officer Koltunovich was motivated by a desire to stifle his religious conduct or expression.  There is no evidence, however, to support any claim that Officer Koltunovich's actions were motivated by Holman's religious beliefs or the content of his expression.

wheel tractor trailer is seen pulling into the alley and another trailer is seen further

down the alley, having already entered.  (Pl.'s Ex. B.)  Holman admits that the

narrow alley is subject to two-way traffic, including these large trucks, coming to

and from Planned Parenthood and a neighboring business.  (SUF, SIO ¶¶ 8, 23.)

Officer Koltunovich's safety concerns are legitimate.  Holman further argues that

the asserted interests are pretext because "persons are frequently in or crossing the

alley due to the abortion business at that location."  (Pl.'s Opp. at 15.)  As noted

above, however, there is a significant difference, in terms of the risk to public safety

and traffic flow, between patrons or employees briefly crossing from the parking

lot to the facility and Holman's lingering in the alley.  The evidence clearly

substantiates Officer Koltunovich's asserted interests in safety and traffic flow.

### B.      Free Speech and Assembly

Holman also argues that Officer Koltunovich's actions violated his First

Amendment rights to free speech and assembly.[4]  "The Supreme Court has

---

[4]  Holman states that he is not making an expressive association claim, *see Boy Scouts of America v. Dale*, 530 U.S. 640, 647-48 (2000) (explaining that implicit in the protections of the First Amendment is a right to associate with others for First Amendment purposes); rather, Holman asserts only his "right to physically assemble."  (Pl.'s Opp. at 11.)  Because the rights of free speech and peaceful assembly are so closely related, the same analysis applies to both.  *See Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983) (discussing forum analysis in terms of both speech and assembly); *Thomas v. Collins*, 323 U.S. 516, 530 (1945) (stating rights of speech and assembly, "though not identical, are inseparable. They are cognate rights"); *Walker-Serrano ex rel. Walker v. Leonard*, 168 F. Supp. 2d 332, 347 (M.D. Pa. 2001) (stating "the right to assemble is

adopted a forum analysis as a means of determining when the Government's

interest in limiting the use of its property to its intended purpose outweighs the

interest of those wishing to use the property for other purposes." *Paff v.*

*Kaltenbach*, 204 F.3d 425, 431 (3d Cir. 2000) (citing *Cornelius v. NAACP Legal*

*Def. & Educ. Fund, Inc.*, 473 U.S. 788, 800 (1985)).  Under this analysis, "[t]he

extent to which the government may limit activity protected by the First

Amendment depends largely on the locale where the speech or conduct takes

place." *Int'l Soc'y for Krishna Consciousness, Inc. v. N.J. Sports & Exposition*

*Auth.*, 691 F.2d 155, 159 (3d Cir. 1982).

The Supreme Court has identified three types of fora:  the traditional public

forum, the designated public forum, and the nonpublic forum.  *Arkansas Educ.*

*Television Comm'n v. Forbes*, 523 U.S. 666, 677 (1998).  Traditional public fora

are defined by the objective characteristics of the property, such as whether the

location has long been open to expressive activity.  *Id.*  Designated public fora are

created only where the government intentionally opens a nontraditional public forum

for public discourse.  *Id.*  Other government properties are either nonpublic fora or

not fora at all.  *Id.*

───────────────────────

intertwined with the right to free speech").

In traditional and designated public fora, limits on First Amendment activity are subject to strict scrutiny, meaning that to be constitutional such limits must be content-neutral, be narrowly tailored to serve a significant government interest, and leave open ample alternative channels for communication of information. *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).  By contrast, limits on First Amendment activity in nonpublic fora are constitutional if they are reasonable and "not an effort to suppress expression merely because public officials oppose the speaker's view."  *United States v. Kokinda*, 497 U.S. 720, 730 (1990).

In this case, the parties seem to agree that Rose Alley is a traditional public forum.[5]  (Def.'s Br. at 9-10; Pl.'s Opp. at 11-12.)  Thus, Officer Koltunovich's actions must be content-neutral, narrowly tailored to serve a significant government interest, and leave open ample alternative channels for communication of information. *Ward*, 491 U.S. at 791.  "The principal inquiry in determining content neutrality ... is whether the government has adopted a regulation of speech because

---

[5] Although in general, "streets, sidewalks, and parks, are considered, without more, to be public forums," *United States v. Grace*, 461 U.S. 171, 177 (1983), it is conceivable that a small alley used only to travel from a parking lot to a business is more akin to the streets and sidewalks that courts have found to be nonpublic fora. *See, e.g.*, *Kokinda*, 497 U.S. at 727-30; *Paff*, 204 F.3d at 430-33; *Holman v. City of York*, 486 F. Supp. 2d 466, 471-72 (M.D. Pa. 2007); *Sabatini v. Reinstein*, C.A. No. 99-2393, 2000 WL 1052103 at *3 (E.D. Pa. July 21, 2000).  Nonetheless, because Officer Koltunovich's actions pass muster under the higher scrutiny applicable to traditional public fora, the Court will base its analysis on the parties' agreement that Rose Alley is a public forum.

of disagreement with the message it conveys." *Id.*  The government actor's

purpose is the controlling consideration; "[g]overnment regulation of expressive

activity is content neutral so long as it is *justified* without reference to the content

of the regulated speech." *Id.*  Here, Officer Koltunovich's actions were content-

neutral.  No evidence has been presented demonstrating that Officer Koltunovich's

actions were motivated by disagreement with the content of Holman's expressive

activity.  Rather, Officer Koltunovich prohibited lingering in the alley out of

concerns for safety and traffic flow and arrested Holman because he failed to

complied with that directive and trespassed on private property.

As discussed above, Officer Koltunovich's instructions were narrowly

tailored to serve these compelling interests.  Officer Koltunovich's significant safety

and traffic concerns are clearly supported by the evidence in this case, and his

directive, and subsequent enforcement of that directive, were designed to do what

was necessary to address those concerns, but not more.  As also noted above,

Officer Koltunovich's directive left open ample alternative channels for

communication.  Holman and his fellow protestors were unrestricted in their ability

to assemble and express their views on any of the public sidewalks surrounding the

Planned Parenthood facility.  Because Officer Koltunovich's actions were content-

neutral, narrowly tailored to serve a compelling interest, and left open ample

channels of communication, Officer Koltunovich is entitled to summary judgment on Holman's speech and assembly claims.

## C.      Unlawful Arrest

Holman argues that Officer Koltunovich violated his Fourth Amendment rights because his arrest was made without probable cause.  "An arrest by a law enforcement officer without a warrant 'is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed.'" *Wright v. City of Philadelphia*, 409 F.3d 595, 601 (3d Cir. 2005) (quoting *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)).  "The determination that probable cause exists for a warrantless arrest is fundamentally a factual analysis that must be performed by the officers at the scene.  It is the function of the court to determine whether the objective facts available to the officers at the time of arrest were sufficient to justify a reasonable belief that an offense had been committed." *Sharrar v. Felsing*, 128 F.3d 810, 818 (3d Cir. 1997).  "Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction.  Therefore, the evidentiary standard for probable cause is significantly lower than the standard which is required for conviction. ... In other words, the constitutional validity of the arrest does not depend on whether the suspect actually committed any crime."  *Wright*, 409 F.3d

18

at 601.  "A court must look at the totality of the circumstances and use a common sense approach to the issue of probable cause."  *Sharrar*, 128 F.3d at 818.

In this case, the totality of the circumstances indicates that Officer Koltunovich's arrest of Holman was supported by probable cause.  Officer Koltunovich directly observed Holman enter the Planned Parenthood parking lot. Officer Koltunovich and other officers have previously instructed Holman and his fellow pro-life advocates that the parking lot located across Rose Alley is private property owned by Planned Parenthood and that Planned Parenthood does not want Holman or other anti-abortion advocates trespassing on its property.  (SUF, SIO ¶ 11.)  Holman admits that, based on these instructions and his approximately dozen trips to the facility, he knew which locations were private property and which locations were public.  (Holman Dep. at 9-10.)  These facts justify Officer Koltunovich's reasonable belief that trespass had been committed.

That Holman was not found guilty does not mean that Officer Koltunovich acted without probable cause.  *Wright*, 409 F.3d at 601.  In fact, in dismissing the citation against Holman, District Justice Haskell indicated that Officer Koltunovich's arrest of Holman was properly supported, stating "I should say, Officer Koltunovich, on the record, I understand exactly why you did what you did, when you did it because you needed to do it, and I don't find you at fault in

19

having filed the citation."  (SUF, SIO ¶ 29; Tr. of Proceedings of Preliminary

Hearing, Mar. 9, 2006 at 49.)

Holman argues that, even though the elements of trespass were met, Officer

Koltunovich did not have probable cause here because he was justified in

trespassing to avoid being struck by the truck, and justification is a defense to

trespass under 18 Pa. C.S. § 503(a).  (Pl.'s Opp. at 17.)  Holman's argument is as

unavailing as it is disingenuous.  First, justification or necessity is an affirmative

defense.  *See, e.g.*, *Commonwealth v. Capitolo*, 498 A.2d 806, 809 (Pa. 1985);

*Commonwealth v. Manera,* 827 A.2d 482, 485 n.7 (Pa. Super. Ct. 2003).  In

making the "fundamentally ... factual analysis ... at the scene," *Sharrar*, 128 F.3d at

818, such affirmative legal defenses are not a relevant consideration in an officer's

determination of probable cause.  *See Sands v. McCormick*, --- F.3d ---, 2007 WL

2701948 at *4-5 (3d Cir. Sept. 18, 2007).  Second, it is questionable whether the

defense of necessity applies here, where Holman was repeatedly warned not to

stand in the alley because of the danger posed by vehicular traffic and where

Holman had ample alternative areas in which to engage in expressive activity.  *See,*

*e.g.*, *Northeast Women's Center, Inc. v. McMonagle*, 868 F.2d 1342, 1352 (3d Cir.

1989), *cert. denied* 493 U.S. 901 (1989) (Justification defense was not available to

anti-abortion activists, found liable in trespass to women's health center, in view of

numerous legal alternatives activists had available.) Finally, it is both ironic and

noteworthy that Holman invokes his fear of being struck by a truck as justification

for his actions. This peril is of course the very reason that Officer Koltanovich

sought to keep pedestrians from lingering in the alley. Here, in effect Holman

disproves his case in its entirety. Holman's arrest was supported by probable

cause, and therefore, Officer Koltunovich is entitled to summary judgment on the

unlawful arrest claim.

### D.      Excessive Force

Holman also claims that Officer Koltunovich used excessive force during his

arrest.  The factual basis for Holman's claim, however, is unclear.  Holman is not

claiming that his handcuffs were too tight or that the process of his arrest caused

any injury or aggravation of a prior injury.[6]  (Holman Dep. at 45-46.)  Holman

suggests that the use of any force was excessive because the arrest was

unsupported by probable cause.  (Pl.'s Opp. at 17-18.)  As discussed above,

however, Officer Koltunovich's arrest was supported by probable cause.  Given

the almost non-existent nature of the "force" used in arresting Holman, it is clear

that the amount of force Officer Koltunovich used was reasonable under the

------

[6] In fact, the video submitted by Holman shows him being arrested, led to and placed into Officer Koltunovich's police cruiser without handcuffs.  (Pl.'s Ex. B at 02:37-03:02.)

circumstances, and therefore, cannot form the basis for an excessive force claim. *Graham*, 490 U.S. at 396-97. Officer Koltunovich is entitled to summary judgment on Holman's excessive force claim.

### E. Qualified Immunity

Officer Koltunovich has raised the defense of qualified immunity. Because, as set forth above, Officer Koltunovich is entitled to summary judgment on Holman's claims that Officer Koltunovich violated his constitutional rights, the Court need not proceed with a qualified immunity analysis. *Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.")

### D. Injunctive Relief and Punitive Damages

Holman seeks both injunctive relief and punitive damages. Because Officer Koltunovich is entitled to summary judgment on Holman's claims, Holman is not entitled to an injunction. *In re Diet Drugs Prod. Liab. Litig.*, 369 F.3d 293, 307 n.7 (3d Cir. 2004) ("Of primary importance, a party seeking an injunction must show that there is some legal transgression that an injunction would remedy. Put differently, a party seeking a permanent injunction must succeed on the merits.").

Similarly, because Officer Koltunovich did not violate Holman's

constitutional rights, his actions cannot constitute the basis for punitive damages.

*See Keenan v. City of Philadelphia*, 983 F.2d 459, 470 (3d Cir. 1992) (stating "the

punitive damage remedy must be reserved, we think, for cases in which the

defendant's conduct amounts to something *more* than a bare violation justifying

compensatory damages or injunctive relief" (emphasis added)).

## IV.   CONCLUSION

For the foregoing reasons, Officer Koltunovich's motion for summary

judgment shall be granted.  An appropriate order shall issue.